UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
DR. GERALD FINKEL, as Chairman of the Joint     :
Industry Board of the Electrical Industry,      :
                                                :
                           Plaintiff,           :      **OPINION & ORDER**
                                                :      14-CV-3585 (DLI)(PK)
                -against-                        :
                                                :
ATHENA LIGHT & POWER LLC,                        :
                                                :
                           Defendant.           :
------------------------------------------------------------------ x

**DORA L. IRIZARRY, Chief Judge:**

On June 4, 2014, plaintiff Dr. Gerald Finkel ("Plaintiff"), in his fiduciary capacity as Chairman of the Joint Board of the Electrical Industry ("Joint Board") and Administrator of various employee benefit plans established and maintained pursuant to collective bargaining agreements ("CBA") between Local Union No. 3 of the International Brotherhood of Electrical Workers, AFL-CIO  ("Local 3") and employer associations and independent or unaffiliated employers in the electrical, elevator, sign, television, burglar alarm and other related industries, brought this action against defendant Athena Light & Power LLC ("Defendant") seeking to recover unpaid withdrawal liability owed to the Employees Security Fund of the Electrical Products Industry ("Pension Fund")  pursuant to Section 4201 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1145, and Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185.

Plaintiff moves for summary judgment to compel payment of the withdrawal liability in the amount of $66,158.00 due to Defendant's failure to contest the withdrawal liability assessment.  (Plaintiff's Memorandum of Law in Support of the Motion for Summary Judgment ("Pl. Mem. of Law") at 1, Dkt. Entry No. 20.)  Plaintiff further moves for the payment of

statutory damages in the amount of $57,558.56 pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2). *Id*. at 13. For the reasons stated below, Plaintiffs' motion for summary judgment is granted.

## BACKGROUND

### I.     Statutory Background

An overview of the pertinent statutory framework will provide necessary context for the events in this action.

#### A.  ERISA

ERISA is a comprehensive statutory scheme governing the administration of employee retirement plans. *Trustees of Local 138 Pension Trust Fund v. F.W. Honerkamp Co. Inc.*, 692 F.3d 127, 128 (2d Cir. 2012). The statute was principally designed "to ensure that employees and their beneficiaries would not be deprived of anticipated retirement benefits by the termination of pension plans before sufficient funds have been accumulated in the plans." *Connolly v. Pension Benefit Guaranty Corporation*, 475 U.S. 211, 214 (1986). "To that end, the statute created an agency, the Pension Benefit Guaranty Corporation ("PBGC"), to administer an insurance system by collecting premiums from covered pension plans and paying out accrued benefits to employees in the event a pension plan has insufficient funds." *Trustees of Local 138 Pension Trust Fund*, 692 F.3d at 129.

#### B.  Multiemployer Pension Plan Amendments Act (MPPAA)

Under a multiemployer pension plan, multiple employers pool contributions into a single fund that remits monetary benefits to covered retirees who spent a certain amount of time working for one or more of the contributing employers. *Id*. These multiemployer plans allow firms to simultaneously:  (1) offer pension benefits to their employees notwithstanding the

frequent economic vagaries confronting certain unionized industries, and (2) share the financial burdens and risks associated with the administration of those pension plans. *Id*.

However, the problem presented by multiemployer plans, especially those in economically declining industries, is the withdrawal of participating employers. *Id*.; *see also Pension Benefit Guaranty Corporation v. R.A. Gray & Co.*, 467 U.S. 717, 722 n. 2 (1984). Such withdrawals reduce a plan's contribution base thereby increasing the contribution rate for remaining employers in order to fund "'past service liabilities, including liabilities generated by employers no longer participating in the plan, so-called inherited liabilities.'" *Trustees of Local 138 Pension Trust Fund*, 692 F.3d at 129 (quoting *Pension Benefit Guaranty Corporation v. R.A. Gray & Co.*, 467 U.S. at 722 n. 2). Congress eventually viewed these rising costs as fueling a potential deluge of withdrawals, "'thereby increasing the inherited liabilities to be funded by an ever-decreasing contribution base'" and imposing an almost insurmountable burden on the PBGC. *Id* at 129-30; (quoting *Pension Benefit Guaranty Corporation v. R.A. Gray & Co.*, 467 U.S. at 722 n. 2).

In response, Congress enacted the Multiemployer Pension Plan Amendments Act ("MPPAA") of 1980 to ERISA, that required employers withdrawing from a multiemployer plan pay withdrawal liability in an amount determined by the plan. *Id*. at 130. "Withdrawal liability is the withdrawing employer's proportionate share of the pension plan's unfunded vested benefits." *Id*. Under this statute, "the employer pays its withdrawal liability in annual installments, which are calculated based on the employer's historical contribution amounts." *Id*.

## II.     Factual Background

The Joint Board is an administrative board, comprised of an equal number of labor union and employer trustees, established by a series of CBAs between Local 3 and various employer

associations in New York's electrical industry. (Plaintiff's Rule 56.1 Statement ("Pl. Rule 56.1 Statement") at ¶ 2, Dkt. Entry No. 20-2; Declaration of Christina A. Sessa, Esq.[1] in Support of Plaintiff's Motion for Summary Judgment ("Sessa Decl.") at ¶ 4, Dkt. Entry No. 20-8.) The Joint Board serves as the administrator and fiduciary of several employee benefit plans, including the Pension Fund, within the meaning of Sections 3(16)(A)(i) and 3(21)(A) of ERISA. (Pl. Rule 56.1 Statement at ¶ 3; Sessa Decl. at ¶ 6.) The Joint Board is vested with the right to collect amounts due to the Pension Fund and to prosecute court actions and arbitrations designed to retrieve monies due to the Pension Fund pursuant to the terms of the Restated Agreement and Declaration of Trust ("Trust Agreement"), which governs the Pension Fund. (Pl. Mem. of Law at 2; Sessa Decl., Ex. A, Trust Agreement at ¶ 1.15.) The Pension Fund is administered by a board of trustees known as the Pension Committee (the "Committee") "comprised of labor and management representatives who share equal representation of the ERISA Plans in accordance with Section 302(c)(5) of the Labor Management Relations Act, 29 U.S.C. § 186(c)(5)." (Pl. Rule 56.1 Statement at ¶ 4.)

Defendant is a small supplier of light fixtures and other electrical components. (Declaration of Donna Rainey[2] in Opposition to Plaintiff's Motion for Summary Judgment ("Rainey Decl.") at ¶ 1, Dkt. Entry No. 21-1.) Defendant has been bound to a series of CBAs between the New York Electrical Wholesalers Association & Independent Wholesale Firms ("NYEWA & IWF") and Local 3 that compel it to remit contributions to the Pension Fund. (Pl. Rule 56.1 St. at ¶ 5; Sessa Decl. at ¶ 8.)

In October 2013, Defendant did not have any union employees and appeared to have ceased business operations. (Sessa Decl. at ¶ 10.) The Joint Board thus concluded that

---

[1] Christina A. Sessa, Esq. is counsel to the Joint Board and oversees matters related to employers' obligations to remit withdrawal liability payments to the Pension Fund. (Sessa Decl. at ¶ 1.)
[2] Donna Rainey is a principal corporate officer of Defendant. (Def. Opp. at 1.)

Defendant permanently ceased operations covered by the CBAs and, therefore, permanently ceased to have an obligation to contribute to the Pension Fund. *Id.* According to the Joint Board, this perceived cessation constituted a complete withdrawal from the Pension Fund within the meaning of Section 4203(a) of ERISA, 29 U.S.C. § 1383(a). *Id.* The complete withdrawal thus triggered a liability payable to the Pension Fund pursuant to Section 4201 of ERISA, 29 U.S.C. § 1381 and the Trust Agreement. *Id.* at ¶¶ 11, 12.

On October 17, 2013, the Joint Board found Defendant to be in default on the withdrawal liability and accelerated the total amount due pursuant to Section 4219 of ERISA, 29 U.S.C. § 1399(c)(5)B), in accordance with Section 9.1(I)(4) of the Trust Agreement. *Id.* ¶ 14. The finding of default was due to Defendant's "apparent cessation of business and sale to Avon Electric Supply." (Sessa Decl., Ex. B, Notice and Demand Letter at 2, Dkt. Entry No. 20-10.) On October 30, 2013, the Joint Board notified Donna Rainey through a Notice and Demand that, "based on the most recent valuation of the Pension Fund, [Defendant's] withdrawal liability had been calculated to be $66,158, to be paid in full within 30 days in accordance with the Committee's October 17, 2013 determination." *Id.* at ¶ 15. The Notice and Demand thus required Defendant to pay its entire withdrawal liability by November 28, 2013. (Pl. Mem. of Law at 9.)

Because Defendant failed to request a review of the withdrawal liability assessment within 90 days of receipt of the Notice and Demand and failed to initiate arbitration, Plaintiff contends that Defendant is precluded from contesting: (1) whether it withdrew from the Pension Fund or (2) the amount of the assessment. (Sessa Decl. at ¶ 17; Pl. Mem. of Law at 4.) Moreover, Plaintiff asserts that the Trust Agreement provides for the payment of interest penalties and liquidated damages on any amount in default from the date payment is due to the

date it is paid.  *Id*. at ¶¶ 20, 22; Ex. A, Trust Agreement at 27, Article IX.(E)(1), Dkt. Entry No. 20-9.   The interest rate set by the Plan Administrator for the collection of delinquent contributions is "one and one-half percent (1½%) for each month or part thereof for which the amount is delinquent."   (Sessa Decl., Ex. A, Trust Agreement at 27, Article IX.(E)(2).) According to the Trust Agreement, the liquidated damages amount is to be the greater of:  "(i) the amount of interest on the unpaid balance, or (ii) twenty (20%) percent (higher percentage, if permitted by Federal or State law) of the unpaid amount awarded."  *Id*. at 27, Article IX.(E)(3)(i) and (ii).  The Trust Agreement also requires that the delinquent employer pay attorney's fees and all costs incurred in the prosecution of the action.  *Id*. at 28, Article IX.(E)(3).

Based upon Defendant's failure to pay its withdrawal liability by November 28, 2013, Plaintiff contends that the Joint Board is entitled to judgment for $66,158.00 in addition to interest penalties, liquidated damages and attorney's fees and costs.  Plaintiff calculates the interest penalty through July 2015 to be $20,839.77 based on a rate of 1½ percent per month from November 28, 2013.  (Pl. Mem. of Law at 10.)  Plaintiff further claims that he is entitled to an award of liquidated damages equal to $20,839.77 as this amount represents the greater of interest on the withdrawal liability and twenty percent of the withdrawal liability pursuant to Section 502(g)(2)(C) of ERISA, 29 U.S.C. § 1132(g)(2)(C).  *Id.* at 10, 13.  Plaintiff also seeks an award of $15,084.50 in attorney's fees and $794.52 in costs, bringing Plaintiff's total damages calculation to $123,716.56.  *Id*. at 11, 12.

Defendant counters that it reasonably relied upon the representations of Christina Sessa ("Sessa") during a November 18, 2013 telephone call in which Sessa instructed Defendant to disregard the Notice and Demand.   (Def. Opp. Mem. at 1.)   Specifically, Donna Rainey ("Rainey") contends that, when she received the Notice and Demand on November 1, 2013, she

immediately contacted Sessa.  (Rainey Decl. at ¶¶ 2, 4.)  After several unsuccessful attempts to reach Sessa, Rainey claims she finally spoke with her on November 18, 2013, whereupon Rainey informed Sessa that Defendant:  (1) had not been sold to another company; (2) had not withdrawn from the Fund; and (3) was still paying union dues for one employee.  *Id*. at ¶ 6.  According to Rainey, Sessa then stated that she had received inaccurate information about Defendant's status as a going business concern and instructed Rainey to disregard the Notice and Demand.  *Id*.  Consequently, Defendant argues that it reasonably relied on Sessa's instruction and representation that Plaintiff had withdrawn the Notice of Demand and that litigation was not imminent.  (Def. Opp. Mem. at 4-5.)  Because of this reliance, Defendant maintains that its right to challenge the withdrawal liability was preserved under the doctrine of equitable tolling.  *Id*. at 3-5.

## DISCUSSION

### I.    Standard for Summary Judgment

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial."  *McCarthy v. Dun & Bradstreet Corp*., 482 F.3d 184, 202 (2d Cir. 2007) (internal quotations omitted).  A fact is "material" within the meaning of Rule 56 when its resolution "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id*.  To determine whether an

issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir. 1995) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam) and *Ramseur v. Chase Manhattan Bank*, 865 F. 2d 460, 465 (2d Cir. 1989)).

"[T]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The moving party bears the burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrates the absence of a genuine issue of fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotations omitted). Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted). The nonmoving party must offer "concrete evidence from which a reasonable juror could return a verdict in [its] favor." *Anderson*, 477 U.S. at 256. The nonmoving party may not "rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible, or upon the mere allegations or denials of the nonmoving party's pleading." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 532-33 (2d Cir. 1993) (citations and internal quotations omitted). "Summary judgment is appropriate only '[w]here the record taken as a whole could

not lead a rational trier of fact to find for the non-moving party.'" *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 141 (2d Cir. 2012) (quoting *Matsushita*, 475 U.S. at 587).

## II.     Defendant Effected a Complete Withdrawal from the Pension Fund

The first issue to address in the instant matter is whether Defendant actually withdrew from the Pension Fund. Such a withdrawal occurs when "an employer (1) permanently ceases to have an obligation to contribute to a plan arising (a) under one or more collective bargaining or related agreements or (b) as a result of a duty under applicable labor-management relations law; or (2) permanently ceases all covered operations under a plan." *ILGWU National Retirement Fund v. Levy Brothers Frocks, Inc.*, 846 F.2d 879, 881 (2d Cir. 1988); *see also* 29 U.S.C. §§ 1383(a)(1) and (2). Here, Defendant contends that it has not withdrawn from the Pension Fund nor has it sold its business to another electrical supplies company notwithstanding Plaintiff's conclusions to the contrary. (Def. Opp. Mem. at 3.) Defendant further argues that its payment of dues for one union member supports its contention that it still was operating as a going concern. *Id*. However, current law holds that a complete withdrawal occurs where an employer has ceased "virtually all operations at the facility for which the employer makes contributions to the plan." *F.H. Cobb Co. v. New York State Teamsters Conference Pension and Retirement Fund*, 584 F. Supp. 1181, 1183 (N.D.N.Y. 1984). "A *virtually complete cessation of contributions*, e.g., a 98 percent reduction, that has the same effect on the plan as a complete cessation of contributions," constitutes a complete withdrawal under the MPPAA. *Id*. (emphasis included). The retention of only one union employee represents a virtually complete cessation of contributions to a multiemployer pension plan.

"ERISA requires that all disputes arising out of a determination made under the withdrawal liability sections must be arbitrated." *Rao v. Prest Metals*, 149 F. Supp.2d 1, 6

(S.D.N.Y. 2001); *see* 29 U.S.C. § 1401. The dispute here concerning whether Defendant has withdrawn from the Pension Fund is a factual dispute within the scope of the MPPAA that must be arbitrated under ERISA. *Id.* In *New York State Teamsters Conference Pension & Retirement Fund v. McNicholas Transportation Co.*, 848 F.2d 20, 21 (2d Cir. 1988), a pension fund had assessed withdrawal liability against the defendant-employer alleging that it had withdrawn when it ceased contributing on behalf of its New York employees. The defendant-employer challenged the determination that it had withdrawn, arguing that it merely had ceased contributions to the pension fund due to a labor dispute at its Pittsburgh location. *Id.* at 22-23. The Second Circuit affirmed the district court's holding that the dispute as to whether the defendant-employer had ceased contributions solely due to the labor issues in Pittsburgh was a dispute that should have been arbitrated. *Id.* at 23.

Indeed, "'[w]here a defendant does not initiate arbitration, it waives its right to arbitration and its right to assert any defenses in an action seeking withdrawal liability' and the 'withdrawal liability assessed against the defendant becomes fixed.'" *National Integrated Group Pension Plan v. Dunhill Food Equipment Corp.*, 938 F. Supp.2d 361, 366 (E.D.N.Y. 2013) (quoting *Finkel v. Fred Todino & Sons, Inc.*, 2010 WL 4646493, at *4 (E.D.N.Y. Oct. 8, 2010)). Here, by failing to request a review within 90 days of the demand or to submit the issue of whether it actually withdrew from the Pension Fund to arbitration, Defendant waived its right to contest both the determination that it had withdrawn and the amount owed in the withdrawal liability.

Accordingly, based on: (1) the MPPAA's mandatory system of arbitration for employers wishing to challenge an assertion of withdrawal from a pension fund; (2) Plaintiff's observations; and (3) the representations made by Defendant's counsel and corporate principals, Defendant

effected a complete withdrawal from the Pension Fund within the meaning of the MPPAA, 29 U.S.C. § 1383(a)(2).

### III.     Withdrawal Liability

The fundamental purpose of withdrawal liability is "'to relieve the funding burden on remaining employers and to eliminate the incentive to pull out of a plan which would result if liability were imposed only on a mass withdrawal by all employers.'" *HOP Energy, L.L.C. v. Local 553 Pension Fund*, 678 F.3d 158, 161 n. 2 (2d Cir. 2012) (quoting *Park S. Hotel Corp v. N.Y. Hotel Trades Council*, 851 F.2d 578, 580 (2d Cir. 1988)).    "Withdrawal from a multiemployer pension plan occurs when an employer permanently ceases to have an obligation to contribute under the plan, or permanently ceases all covered operations under the plan." *Gesualdi v. Seacost Petroleum Products, Inc.*, 97 F. Supp.3d 87, 97 (E.D.N.Y. 2015) (internal quotation marks and citations omitted).    In the case of either complete withdrawal or partial withdrawal, "the employer is liable to the plan in the amount determined under [ERISA] to be the withdrawal liability."    *Id.* (internal quotation marks omitted).    Upon withdrawal from the pension plan, the plan's sponsor must determine the amount of the withdrawal liability and notify the withdrawing employer of that amount and provide an amortized payment schedule. *Id.* (internal quotation marks and citations omitted).

Once the employer receives notice of withdrawal liability from the pension plan, it must make payments pursuant to the plan's schedule within 60 days of receipt of the plan's demand for withdrawal liability.    *Id.*; *See Daniello v. Planned System Integration Ltd.*, 2009 WL 2160536, at *3 (E.D.N.Y. July 17, 2009).    Should the employer fail to make such payments

consistent with the aforementioned procedure, "the plan sponsor must again notify the employer of its default and, if not cured within 60 days of receiving notice of payment, 'the fund is entitled to immediate payment of the employer's entire withdrawal liability, in addition to accrued interest on the total outstanding liability.'" *Seacost Petroleum Products*, 97 F. Supp.3d at 98 (quoting *Daniello*, 2009 WL 2160536, at *3).

Under the MPPAA, "[i]f the employer disputes the amount of withdrawal liability, it must request a review within 90 days of the demand." *Bowers v. Transportacion Maritama Mexicana, S.A.*, 901 F.2d 258, 261 (2d Cir. 1990); *see* 29 U.S.C. § 1399(b)(2)(A). In the event that the parties are unable to resolve the dispute, mandatory arbitration must be initiated "within 60 after the earlier of either (1) notification by the plan sponsor of the result of the requested review or (2) 120 days of the date review was requested." *Bowers*, 901 F.2d at 261; *see also* 29 U.S.C. § 1401(a)(1).

In order to prevail on a claim for withdrawal liability under the MPPAA on summary judgment, a plaintiff must establish that: (1) defendant constituted an "employer" under the MPPAA prior to withdrawal; (2) defendant received notice of the withdrawal liability assessment against it; and (3) defendant failed to initiate arbitration as required by the MPPAA. *National Integrated Group Pension Plan*, 938 F. Supp.2d at 366 (internal quotation marks and citations omitted). The Court evaluates each of these three elements in turn.

**A. Defendant Was An Employer Under the MPPAA**

Since the MPPAA does not contain a definition of the term "employer," the Second Circuit has held that "the definition of who is an employer for purposes of determining withdrawal liability under the MPPAA is one that in the final analysis must be left to the courts." *Korea Shipping Corp. v. New York Shipping Association-International Longshoremen's*

*Association Pension Trust Fund*, 880 F.2d 1531, 1536 (2d Cir. 1989). One district court within the Second Circuit has defined employer to mean "a person who is obligated to contribute to a plan either as a direct employer or in the interest of an employer of the plan's participants." *Korea Shipping Corp. v. New York Shipping Association-International Longshoremen's Association Pension Trust Fund*, 663 F. Supp. 766, 770 (S.D.N.Y. 1987); *see also Korea Shipping Corp.*, 880 F.2d at 1537. This Court adopts this definition of the word "employer."

Here, there is no dispute that Defendant was an employer within the meaning of the MPPAA prior to withdrawal. Defendant's own concessions in its Counter-Statement of Material Facts and Rainey's representations reveal that it was indeed an employer that also acknowledged its continuing obligations to the Pension Fund. (Defendant's Counter-Statement of Material Facts ("Def. Rule 56.1 Statement") at ¶ 5, Dkt. Entry No. 21-2; Rainey Decl. at ¶ 6.)

### B. Defendant Received Notice of the Withdrawal Liability Assessment Against It

Defendant concedes it received the Notice and Demand indicating the assessment of a $66,158.00 withdrawal liability against it. (Def. Rule 56.1 Statement at ¶ 6; Rainey Decl. at ¶ 2.)

### C. Defendant Failed to Initiate Arbitration as Required by the MPPAA

Defendant admits that it did not initiate arbitration with respect to either the determination that Defendant had withdrawn from the Pension Fund or the amount of the withdrawal liability assessed against it. *Id.* at ¶ 12. This failure to arbitrate necessarily results in the Court's adoption of the sum proffered by Plaintiff. *See Labarbera v. United Crane and Rigging Services, Inc.*, 2011 WL 1303146, at *5 (E.D.N.Y. Mar. 2, 2011) (finding that "where, …, an employer fails to take action in a timely manner after being notified[,]" the employer shall be liable for the full withdrawal liability amount asserted by the plaintiff). Indeed, Defendant's failure to arbitrate pursuant to Section 4221(a)(1)(A) of ERISA, 29 U.S.C. §

1401(a)(1)(A), triggers an immediate waiver of the right to contest the withdrawal liability assessment as well as an acceleration of the timetable under which the assessment must be paid. *Bowers*, 901 F.2d at 265.

Having satisfied the necessary three elements, Plaintiff's motion for summary judgment should be granted; however, the question of whether equitable tolling as a defense applies here remains.

## IV.    The Doctrine of Equitable Tolling Does Not Preserve Defendant's Right to Litigate Withdrawal Liability

The Second Circuit has defined equitable tolling to mean "fraudulent concealment of a cause of action that has in some sense accrued earlier" or "fraudulent concealment that postpones the accrual of a cause of action." *Pearl v. City of Long Beach*, 296 F.3d 76, 82 (2d Cir. 2002) (internal quotation marks and citations omitted).  Under the latter definition of equitable tolling:

> [T]he statute does not begin to run until the plaintiff either acquires knowledge of the facts that comprise his cause of action or should have acquired such knowledge through the exercise of reasonable diligence . . .  The doctrine has been applied . . .  where the facts show that the defendant engaged in conduct, often itself fraudulent, that concealed from the plaintiff the existence of a cause of action.

*Id.* (quoting *Cerbone v. International Ladies' Garment Workers' Union*, 768 F.2d 45, 48 (2d Cir. 1985)).  The Second Circuit further clarified this definition by holding that the relevant inquiry "is not the intention underlying [a defendant's] conduct, but rather whether a reasonable plaintiff in the circumstances would have been aware of the existence of a cause of action." *Veltri v. Building Service 32B-J Pension Fund*, 393 F.3d 318, 323 (2d Cir. 2004).

Although the MPPAA review and arbitration time limitation provisions contain no tolling recourse, they are subject to equitable tolling under appropriate circumstances.  *Bowers*, 901 F.2d at 264.  Generally, to merit equitable relief, a party must have acted with reasonable

diligence during the time period sought to be tolled. *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir. 2002). "[T]he employer in a withdrawal liability case must move decisively to present the issue in court within the statutory time period for arbitration" in order to warrant equitable tolling. *Board of Trustees of Trucking Employees of North Jersey Welfare Fund, Incorporated--Pension Fund v. Canny*, 900 F. Supp. 583, 595 (N.D.N.Y. 1995). Therefore, the burden of proving that tolling is appropriate rests on the party asserting that recourse. *Chapman*, 288 F.3d at 512.

Defendant contends that its reliance on Sessa's instruction to disregard the Notice and Demand invoked the protection of the equitable tolling doctrine and thereby afforded Defendant additional time to present defenses to both the claim of withdrawal and the withdrawal liability assessment. (Def. Opp. Mem. at 3.) Defendant further argues that Rainey's repeated calls to Sessa refuting the conclusions in the Notice and Demand and explaining that Defendant still operated as a going concern constituted sufficiently reasonable diligence to warrant the tolling of the 60-day period. *Id*. at 4.

Under Section 4221(a)(1)(A) of ERISA, 29 U.S.C. § 1401(a)(1)(A), arbitration must be initiated within a 60-day period after the date an employer participating in a multiemployer pension plan is notified of a demand to pay withdrawal liability. 29 U.S.C. § 1401(a)(1)(A); 29 U.S.C. § 1399(b)(2)(B). Here, Defendant received notice on November 1, 2013 of a demand for payment of a withdrawal liability assessment. (Def. Opp. Mem. at 1-2.) Thus, Defendant had until December 31, 2013 to initiate arbitration proceedings.

Rainey claims that, upon receipt of the Notice and Demand, she immediately contacted Sessa but was unable to reach her. (Rainey Decl. at ¶ 4.) On November 13, 2013, Rainey attempted to reach Sessa again by telephone, but to no avail. *Id*. at ¶ 5. On November 18, 2013,

Rainey finally spoke with Sessa whereupon she informed Sessa that Defendant had not been sold and was still participating in the Pension Fund through the payment of union dues for one employee. *Id.* at ¶ 6. Rainey maintains that, upon hearing this information, Sessa instructed Rainey to disregard the Notice and Demand. *Id.* Notwithstanding Sessa's alleged instruction, Plaintiff did not prevent or delay Defendant from initiating arbitration through an act of fraudulent concealment as is required to invoke the doctrine of equitable tolling. *Pearl*, 296 F.3d at 92. Moreover, Defendant failed to present the issue of equitable tolling in court within the statutory time period for arbitration thus precluding the defense of equitable tolling. *Canny*, 900 F. Supp. at 595 (finding that, "in order to warrant equitable tolling, the employer in a withdrawal liability case must move decisively to present the issue in court within the statutory time period for arbitration"). Accordingly, the doctrine of equitable tolling does not apply in this circumstance and Defendant may not assert any defenses to the withdrawal liability assessment.

The Court concurs with Plaintiff's contention that, even if equitable tolling applied due to Sessa's alleged misrepresentation, Defendant could have initiated arbitration once it received the complaint, which informed Defendant that Plaintiff intended to pursue the withdrawal liability assessment. (Plaintiff's Reply Memorandum of Law In Support of the Motion for Summary Judgment ("Pl. Reply") at 5-7, Dkt. Entry No. 22.) Indeed, Defendant received the complaint on June 12, 2014, but still has not made any attempts to initiate arbitration proceedings. (Summons returned executed by Gerald Finkel ("Summons") at 2, Dkt. Entry No. 4.) The Second Circuit has held that "a plaintiff who has actual knowledge of the right to bring a judicial action . . . may not rely on equitable tolling . . ." *Veltri*, 393 F. 3d at 323. Receipt of the complaint constitutes actual knowledge of Defendant's right to arbitrate the withdrawal liability assessment thereby nullifying any professed reliance on equitable tolling.

Thus, Plaintiff has met its burden under Fed. R. Civ. P. 56 by demonstrating that no genuine issue of material fact exists in this case. Defendant was an "employer" under the MPPAA, it was notified of a withdrawal liability assessment against its interests and failed to pay or initiate arbitration within the statutory time period. Therefore, Plaintiff's motion for summary judgment is granted and Defendant is ordered to pay $66,158.00 in withdrawal liability immediately.

## V.    Damages

The final question before the Court is whether to award damages and, if so, in what amount. "In any action to collect withdrawal liability in which a judgment in favor of the plan is awarded, the court shall award the plan, in addition to the unpaid withdrawal liability, reasonable attorneys' fees and costs, interest, and liquidated damages." *National Integrated Group Pension Plan*, 938 F. Supp.2d at 379 (internal quotation marks and citations omitted). These damages remedies are mandatory. *Id*. ERISA specifically provides for statutory damages in the event of noncompliance with an employer's obligation to make contributions to a multiemployer pension plan under 29 U.S.C. § 1132(g)(2) as follows:

(A) the unpaid contributions;
(B) interest on the unpaid contributions;
(C) an amount equal to the greater of—
    (i)      interest on the unpaid contributions or
    (ii)     liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A);
(D) reasonable attorney's fees and costs of the action, to be paid by the defendant; and
(E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2); *Seacost Petroleum Products*, 97 F. Supp. at 96-97.

However, Plaintiff must still prove damages and the Court must assess whether Plaintiff has produced sufficient evidence of the damages it seeks. *Cement and Concrete Workers*

*District Council Welfare Fund, Pension Fund, Annuity Fund, Education and Training Fund and Other Funds v. Metro Foundation Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012).

### A.  Withdrawal Liability Assessment Amount

Plaintiff contends that Defendant failed to pay the withdrawal liability assessment within the 30-day time period.  Furthermore, Defendant did not contest the amount of the withdrawal liability assessment, nor did it seek arbitration within the statutory time period.  As such, the Court is not required to evaluate how Plaintiff arrived at the withdrawal liability assessment and simply may adopt it as proffered by Plaintiff.  *National Integrated Group Pension Plan*, 938 F. Supp.2d at 366.  Based on its claim, Plaintiff shall be awarded withdrawal liability in the amount of $66,158.00.

### B.  Interest on Withdrawal Liability Assessment

Plaintiff next seeks prejudgment interest on the withdrawal liability amount pursuant to the Trust Agreement and Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), which mandates an award of interest at the rate established by the pension plan.  (Pl. Mem. of Law at 9.)  The Trust Agreement provides for the payment of interest at a rate of 1½ percent per month, or 18 percent per year, accruing from November 28, 2013, when payment was due, through July 2015. (Sessa Decl., Ex. A, Trust Agreement at 27, Section 9.1(E)(2); Pl. Mem. of Law at 10.) However, Plaintiff's total interest calculation of $20,839.77 appears to be incorrect based upon the applicable time frame.  (Pl. Rule 56.1 Statement at ¶ 16.)

Interest calculated at 1½ percent per month on the $66,158.00 withdrawal liability amounts to $992.37 per month.  The time period from November 28, 2013 through July 2015

encompasses twenty months. Therefore, the correct total prejudgment interest calculation is $19,847.40 with additional interest accruing from August 2015 through the month of payment at a monthly rate of $992.37. Plaintiff is thereby awarded $19,847.40 in prejudgment interest with additional interest accruing from August 2015 through the month of payment at a monthly rate of $992.37.

### C. Liquidated Damages

Under the Trust Agreement and Section 502(g)(2)(C) of ERISA, 29 U.S.C. § 1132(g)(2)(C), Plaintiff is entitled to additional damages in an amount equal to the greater of: (i) the interest charged on the withdrawal liability assessment, or (ii) a liquidated damages award equal to twenty percent of the withdrawal liability assessment. *Seacost Petroleum Products*, 97 F. Supp.3d at 102; (*see* Trust Agreement at 27, Section 9(E)(3)(i) and (ii); 29 U.S.C. § 1132(g)(2)(C)(i) and (ii).) Plaintiff has correctly calculated that twenty percent of the $66,158.00 in unpaid withdrawal liability is $13,231.60, while the total interest due as of July 2015 is $19,847.40. According to Section 502(g)(2)(C)(i), 29 U.S.C. § 1132(g)(2)(C)(i), Plaintiff is entitled to an award of liquidated damages equal to $19,847.40, in addition to $992.37 per month from July 2015 through the entry of judgment.

### D. Reasonable Attorneys' Fees and Costs

#### 1) Reasonable Attorneys' Fees

The award of attorney's fees and costs is mandatory under 29 U.S.C. § 1132(g)(2)(D) upon a determination that a multiemployer pension plan is entitled to judgment. *Labarbera v. Clestra Hauserman, Inc.*, 369 F.3d 224, 226 (2d Cir. 2004). The Trust Agreement also requires that an employer participating in the Pension Fund remit "attorney's fees and all costs incurred in an action for withdrawal liability." (Trust Agreement at 28, Section 9.1(E).)

The Second Circuit established the standard for attorney's fee calculations to be the presumptively reasonable fee that a paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively. *Simmons v. New York City Transit Authority*, 575 F.3d 170, 174 (2d Cir. 2009). In applying the presumptively reasonable fee standard, district courts should adhere to the forum rule and use the hourly rates employed in the district in which the reviewing court sits when calculating this fee unless the case-specific variables warrant the use of higher out-of-district rates. *Id*. Here, application of the prevailing hourly rate within the Second Circuit under the presumptively reasonable fee standard is appropriate. The presumptively reasonable fee has become coterminous with the lodestar method historically employed by the district courts within the Second Circuit. *See McDaniel v. County of Schenectady*, 595 F.3d 411, 420 (2d Cir. 2010); *Trustees of Local 531 Pension Fund v. Flexwrap Corp.*, 818 F. Supp.2d 585, 590 (E.D.N.Y. 2011).

In determining the presumptively reasonable fee, district courts multiply a reasonable hourly rate by a reasonable number of expended hours. *Seacost Petroleum Products*, 97 F. Supp.3d at 104. "In order to calculate the reasonable hours expended, the prevailing party's fee application must be supported by contemporaneous time records, affidavits, and other materials." *McDonald ex rel Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91, 96 (2d Cir. 2006). The Second Circuit has deemed a reasonable hourly rate to be consistent with the "'prevailing [rates] in the community for similar services by lawyers of reasonably comparable skill, expertise and reputation.'" *Id*. (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n. 11 (1984)). Indeed, the party seeking reimbursement of attorneys' fees bears the ultimate "burden of proving the reasonableness and necessity of hours spent and rates charged." *Seacost Petroleum Products*, 97 F. Supp.3d at 104.

### a) Hourly Rates

Plaintiff paid a total of $15,084.50 in attorney's fees and requests an award in that amount. (Mackson Decl. at ¶¶ 10, 13.) The fees charged for legal counsel in this action have been itemized as follows: (1) $390.00 per hour for partner time through January 31, 2015 and $410.00 per hour for partner time effective February 1, 2015; (2) $315.00 per hour for associate time through January 31, 2015 and $330.00 per hour for associate time effective February 1, 2015; and (3) $95.00 per hour for paralegal time. *Id*. at ¶ 13. Plaintiff supports its request with time records detailing the tasks that the attorneys and paralegals completed throughout the course of this litigation and the number of hours allotted toward each task. (*See* Mackson Decl., Exhibit D, Dkt. Entry No. 20-7.)

The Eastern District of New York has "'routinely approved hourly rates ranging from $200-$400 for partners, $100-$300 for associates, and $70-$90 for paralegals.'" *Gesualdi v. Tapia Trucking LLC*, 2012 WL 7658194, at *4 (E.D.N.Y. Oct. 15, 2012), *report and recommendation adopted,* 2013 WL 831134 (E.D.N.Y. Mar. 6, 2013) (quoting *Gesualdi v. Magnolia Pro Trucking, Inc.*, 2012 WL 4036119, at *9 (E.D.N.Y. Aug. 20, 2012), *report and recommendation adopted*, 2012 WL 4035779 (E.D.N.Y. Sept. 11, 2012)). Courts in this district historically have accounted for the relative simplicity of ERISA default cases by consistently approving rates that are closer to the lower end of this range. *Id*.

The Court further notes that Plaintiff's counsel, Cohen Weiss & Simon LLP ("CW&S"), regularly prosecutes motions for default judgments in ERISA actions on behalf of various multiemployer pension funds. Therefore, the Court is not without guidance, from its own past experience and from judges within this district, as to the propriety and reasonableness of the hourly rates sought here. *See Gesualdi v. Fortunata Carting Inc.*, 5 F.Supp.3d 262, 280-81

(E.D.N.Y. 2014) (reducing CW&S partner rate from $400.00 per hour to $390.00 per hour, reducing senior associate rate from $375.00 per hour to $275.00 per hour, reducing junior associate rate from $225.00 to $175.00 per hour, reducing paralegal rate from $110.00 and $100.00 per hour to $90.00 per hour in an ERISA default action); *Gesualdi v. Loriann Trucking Co., Inc.*, 2012 WL 3887205, at *9 (E.D.N.Y. July 27, 2012), *report and recommendation adopted*, 2012 WL 3887170 (E.D.N.Y. Sept. 6, 2012) (reducing rate for CW&S junior associate Tzvi Mackson from $225.00 per hour to $150.00 per hour); *Finkel v. Fred Todino & Sons, Inc.*, 2010 WL 4646493, at *6 (E.D.N.Y. Oct. 8, 2010), *report and recommendation adopted*, 2010 WL 4673961 (E.D.N.Y. Nov. 3, 2010) (awarding a rate of $370.00 per hour for CW&S partner work, $275.00 per hour for associate work and $90.00 per hour for paralegal work).

Plaintiff seeks $390.00 per hour for work performed by firm partner David R. Hock[3] ("Hock") from the commencement of this matter through January 31, 2015—a total of seven months and twenty-seven days from June 4, 2014, when the complaint was drafted. (Mackson Decl. at ¶ 13; *see* Complaint ("Compl."), Dkt. Entry No. 1.) This partner rate then increased to $410.00 per hour as of February 1, 2015. (Mackson Decl. at ¶ 13.) While a rate of $390.00 per hour lies within the approved range of partner rates in this district, albeit on the upper end, the $410.00 per hour rate falls beyond the scope of historically approved rates and does not reflect the simplicity of work typically required in ERISA withdrawal liability cases. *See Fred Todino & Sons*, 2010 WL 4646493, at *6 (awarding a rate of $370.00 per hour for partner time in an ERISA action to collect withdrawal liability); *Gesauldi v. MBM Industries, Inc.*, 2010 WL 3724348, at *2 (E.D.N.Y. Sept. 15, 2010) (awarding a rate of $390.00 per hour for partner time in an ERISA default judgment case); *LaBarbera v. Ovan Construction, Inc.*, 2011 WL 5822629,

---

[3] Jani K. Rachelson, another partner at Cohen Weiss & Simon LLP, also billed Plaintiff for the thirty minutes in which she reviewed and revised the draft complaint. (Mackson Decl., Exhibit D at 4.)

at *5 (E.D.N.Y. Sept. 20, 2011), *report and recommendation adopted,* 2011 WL 5825785 (E.D.N.Y. Nov. 16, 2011) (approving rate of $390.00 per hour for work by partner in an ERISA litigation, including summary judgment motion). Given the lack of complexity in this matter and Plaintiff's failure to provide a reason for the increase in their attorneys' hourly fees, the Court finds the hourly partner rate of $410.00 to be unreasonable in this district. Accordingly, the Court adjusts the hourly partner rate to $390.00, which is reasonable and within the prevailing market range.

Plaintiff seeks $315.00 per hour for work performed by associate Tzvi Mackson ("Mackson") for the same time period listed above for Hock. (Mackson Decl. at ¶ 13; *see* Compl.) This associate rate then increased to $330.00 per hour as of February 1, 2015. (Mackson Decl. at ¶ 13.) Neither of these amounts fall within the range of rates approved for associates in this district. *Tapia Trucking*, 2012 WL 7658194, at *4 (finding that the Eastern District has routinely approved hourly rates ranging from $100.00 to $300.00 for associates). The rates are unreasonable given the associate's level of experience, the relative simplicity of ERISA withdrawal liability matters and the hourly rates at which Mackson has previously billed. *See Id*. at *5 (reducing Mackson's hourly rate to $150.00 from $225.00). In a similar ERISA default matter, the fees for Mackson were reduced from $225.00 to $150.00 per hour given his status as a junior associate and the prevailing rate of compensation for that rank in 2012. *Loriann Trucking*, 2012 WL 3887205, at *9. Taking into account that Mackson has acquired additional ERISA litigation experience since 2012, the Court reduces his hourly rate to $280.00 as consistent with prevailing associate rates for comparable levels of experience. *MBM Industries*, 2010 WL 3724348, at *2 (awarding rate of $280.00 per hour for work in an ERISA default judgment case performed by an associate with 9 years of experience); *LaBarbera*, 2011

WL 5822629, at *5 (awarding rate of $280.00 per hour for work in ERISA litigation, including summary judgment motion, performed by an associate with 3 years of labor and employment benefits law experience at the time litigation commenced).

Similarly, the requested $95.00 hourly rate for paralegal work also should be reduced as it is higher than rates that have been awarded in similar cases. *Magnolia Pro Trucking*, 2012 WL 4036119, at *9 (finding $100.00 per hour paralegal rate to be excessive and reducing it to $75.00 per hour). Accordingly, the Court reduces Plaintiff's paralegal hourly rate from $95.00 to $90.00, which is consistent with the higher end of the paralegal pay range in ERISA litigation. *Tapia Trucking*, 2012 WL 7658194, at *5 (finding $100.00 per hour paralegal rate in an ERISA default case to be excessive and reducing it to $75.00 per hour); *Fred Todino & Sons*, 2010 WL 4646493, at *6 (awarding rate of $90.00 per hour for paralegal work in an ERISA action to collect withdrawal liability).

### b) Hours Expended

An applicant for attorney's fees also "bears the burden of demonstrating the hours expended and the nature of the work performed through contemporaneous time records that describe with specificity the nature of the work done, the hours, and the dates." *Loriann Trucking*, 2012 WL 3887205, at *10. Plaintiff seeks reimbursement for a total of 55.8 hours of legal work, which includes 15 hours of partner work, 22.5 hours of associate work and 18.3 hours of paralegal work. (Mackson Decl. at ¶ 13.) Plaintiff's submissions with respect to the hours expended sufficiently document the time allotted to each specific task throughout the course of this litigation. The Court finds that the time expended here is reasonable for a case that proceeded to summary judgment. *See Trustees of Local 531 Pension Fund*, 818 F. Supp.2d at 591 (approving 82 hours of work for an ERISA withdrawal liability action that proceeded to

summary judgment); *Finkel v. Jones Lang LaSalle Americas, Inc.*, 2009 WL 5172869, at *5 (E.D.N.Y. Dec. 30, 2009) (finding expenditure of 51.3 hours of legal work for an ERISA default action to be reasonable).

Based upon the Court's readjusted hourly rates, Plaintiff is awarded attorney's fees as follows:

| Position | Hours Worked | Hourly Rate of Compensation | | Adjusted Fee |
|:---:|:---:|:---:|:---:|:---:|
| | | **Claimed** | **Adjusted** | |
| Partner | 15.0 | $390.00 – $410.00 | $390.00 | $5,850.00 |
| Associate | 22.5 | $315.00 – $330.00 | $280.00 | $6,300.00 |
| Paralegal | 18.3 | $95.00 | $90.00 | $1,647.00 |
| **Total** | **55.8** | | | **$13,797.00** |

Accordingly, the Court awards Plaintiff total attorney's fees in the amount of $13,797.00.

### 2) Costs

Finally, Plaintiff seeks reimbursement for expenses which total $794.52. (Mackson Decl. at ¶ 16.) Specifically, Plaintiff seeks to recover the $400.00 filing fee for this action and additional miscellaneous charges for postage, photocopies and computer research. *Id.* Plaintiff provides contemporaneous billing records in support of this request. (*See* Mackson Decl., Exhibit D.)

"[], ERISA provides for the recovery of costs associated with the litigation and '[a] court will generally award "those reasonable out-of-pocket expenses incurred by the attorney[s] and which are normally charged fee paying clients."'" *Seacost Petroleum Products*, 97 F. Supp.3d at 109 (quoting *Jones Lang LaSalle Americas*, 2009 WL 5172869, at *6 (quoting *Reichman v. Bonsignore, Brignati & Mazzotta, P.C.*, 818 F.2d 278, 283 (2d Cir. 1987)); *see* 29 U.S.C.

§ 1132(g)(2)(D). This Court finds Plaintiff's request for costs reasonable and adequately supported. *See Fred Todino & Sons*, 2010 WL 4646493, at *6 (awarding $881.16 in costs consisting of a $350.00 court filing fee, $272.00 for service of process and service of subpoenas on third parties during discovery, and miscellaneous charges for postage, photocopies, computer research and document delivery services in an ERISA withdrawal liability action that proceeded to summary judgment); *Tapia Trucking*, 2012 WL 7658194, at *5 (awarding $625.04 in costs consisting of court filing fees, service of process, and miscellaneous charges including postage and photocopying for an ERISA default action). Accordingly, Plaintiff is awarded costs in the amount of $794.52.

**[INTENTIONALLY LEFT BLANK]**

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is granted. Accordingly, Defendant is ordered to pay Plaintiff withdrawal liability in the amount of $66,158.00 within 30 days of the date of this Order. Plaintiff also is awarded the following amounts in statutory damages to be paid within 30 days of the date of this Order: (1) prejudgment interest in the amount of $19,847.40, with $992.37 monthly interest accruing from August 2015 through the month of payment; (2) liquidated damages in the amount of $19,847.40 with $992.37 monthly interest accruing from July 2015 through the month of payment; (3) attorney's fees in the amount of $13,797.00; and (4) miscellaneous costs in the amount of $794.52. Accordingly, Defendant must pay Plaintiff a total of $120,444.32 within 30 days of the date of this Order exclusive of the $992.37 in monthly interest charges that will have accrued by said date.

SO ORDERED.

Dated: Brooklyn, New York
         September 11, 2016

                                        /s/
                    _____
                              DORA L. IRIZARRY
                                Chief Judge